IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 23, 2022

## STATE OF TENNESSEE v. TYRONE DE ANGELO SHAW

**Appeal from the Criminal Court for Knox County**
**No. 118439    G. Scott Green, Judge**

_____

### No. E2021-00437-CCA-R3-CD

_____

The Defendant, Tyrone De Angelo Shaw, appeals from his guilty plea conviction for aggravated assault, a Class C felony. *See* T.C.A. § 39-13-102 (Supp. 2019) (subsequently amended). The trial court ordered the Defendant to serve the agreed-upon ten-year, Range II sentence. On appeal, the Defendant contends that the court erred in denying alternative sentencing and in denying his motion for reduction of sentence pursuant to Tennessee Rule of Criminal Procedure 35. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Eric Lutton, District Public Defender; John Randolph Halstead, Assistant District Public Defender, for the Appellant, Tyrone De Angelo Shaw.

Herbert H. Slatery III, Attorney General and Reporter; Hannah-Catherine Lackey, Assistant Attorney General; Charme P. Allen, District Attorney General; Hector Sanchez and Kevin Allen, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Defendant's conviction relates to the October 25, 2020 shooting of Patrick Carr. According to the trial judge's and defense counsel's statements at the guilty plea hearing, the Defendant was charged by warrant with attempted first degree murder, but the charge was modified to aggravated assault in an information. The State's concession to a lesser charge was made in exchange for the Defendant's agreement to plead guilty as a Range II offender, despite his lack of a prior criminal history.

At the guilty plea hearing, the prosecutor recited the following facts:

> Your Honor, had this case gone to trial the witnesses listed would testify, specifically Investigator Chaz Terry with the Knoxville Police Department Major Crimes Unit, as well as Investigator Jason Booker, that on the date of the offense, October 25th, at roughly 8:50 p.m., they responded to Montgomery Village . . . in reference to a shooting.
>
> Upon arriving at the scene, they were able to make contact with the victim, Patrick Carr. Mr. Carr was suffering from multiple gunshot wounds. He had a gunshot wound to his face, to his neck, to his shoulder, his back, and arm. Witnesses at the scene would later learn that the defendant . . . was present at the apartment waiting for a friend when he and the victim got into a verbal confrontation.
>
> The defendant's account would then be that he thought that Mr. Shaw was retrieving a firearm from his pants, and based on what he observed, he pulled out his pistol and fired multiple shots at the victim. Three shell casings were recovered from the scene, all consistent in caliber.
>
> Further proof would be that after the shooting, Mr. Shaw did confide in his step-parents, specifically his . . . foster father, that being Benjamin Alexander. He did go to his residence and inform him that he did, in fact, shoot the victim and he was visibly upset. He did refer to the victim as [M]oney, and he did say that the shooting did occur in Montgomery Village.
>
> Further proof would be that based on the shooting, the victim is now wheelchair bound based on the serious gravity of the injuries.

The assistant district attorney stated that his office had concerns about proceeding with the case due to the victim's inability, due to his injuries, to assist in the prosecution.

Defense counsel added that the Defendant had spoken by telephone with a detective and that the recording of the call revealed the following:

> [The Defendant] indicated . . . that he was fearful for his life at the time that this happened. The background is apparently a friend of [the Defendant's] was previously killed and this victim may have been the one bragging about having done that. So when [the Defendant] saw [the victim, the Defendant] was afraid that the person was coming for him, and that's why this happened.

At the sentencing hearing, the Defendant sought judicial diversion or, alternatively, probation.

Due to the victim's physical and mental limitations from his injuries, the victim impact statement was provided by the victim's mother. She stated that the victim had been shot nine times: in the face, neck, both legs, both arms, and three times in the back. She said the victim suffered two strokes, lost 75% of his speech, and was able to converse at the level of a two- to three-year-old. She said the victim's children cried because the victim was not the same person they had known and that he was unable to play outside with them. She said that she was the victim's caregiver and that he would have future vocal cord surgery. She said the victim was uninsured and was only able to receive physical therapy and mental health therapy because professionals had donated their services. She said the victim's doctors had encouraged the victim to apply for Social Security Disability, which had not yet been approved.

The Defendant provided the following allocution: He was in fear for his life on the night of the shooting. He saw that the victim "had a gun out and that the [gun] was taken from his person." The Defendant had been told by a police investigator and his attorney that "things were taken off [the victim's] person when he was on the ground." The victim asked him repeatedly if he were someone else, and he kept telling the victim he was not. The Defendant "hated that this happened" because he had "never been that person." He said he had "always been the one to be hurt." He said that he had never been accepted into mental health therapy, even though he had mental illness, but that he thought he would benefit from therapy. He disagreed that the victim had been shot nine times and said he knew he shot the victim three times while backing away.

The Defendant stated that he had gone to the neighborhood where the incident occurred to visit someone he had tutored in high school, whom he wanted to see because he was feeling down after a memorial event for his grandmother. The Defendant said that as soon as he got out of his car, he saw the victim "standing there" with a "full mask up" and a gun in his hand. The Defendant said that the victim asked repeatedly if he were the brother of the person whom the Defendant was there to see and that he had responded he was not.

The Defendant stated that he always had his firearm with him but that he only carried it on his person when he was "in areas like that." He said that he had developed a relationship with his foster father by accompanying him to a gun range.

The Defendant said that he stood in the middle of the parking lot and that the victim stood in front of the Defendant's friend's house when the Defendant fired the shots. The Defendant said that his gun had been in his pocket and that the victim had already displayed his gun when the Defendant retrieved and fired his gun.

-3-

When asked by the trial court if any witnesses had reported seeing the victim with a gun, the prosecutor stated that none had come forward to say the victim had or had not had a gun. The prosecutor stated, however, that a 9-1-1 caller had reported hearing four to five shots and that only three shell casings had been recovered from the scene. The prosecutor said that the victim's girlfriend had removed the victim's cell phone from his person but that she later provided it to a police investigator.

The presentence report reflected the following: The Defendant was age twenty at the time of the offense and had completed high school and some college. He had no prior criminal history and had two jail infractions for "resisting" and "fighting." He reported "fair" mental health and a history of treatment for anxiety and bipolar disorder but was no longer taking medication because he had no refills remaining. He reported past daily marijuana use. He also reported past occasional use of alcohol, opioids, and MDMA. He reported having used heroin once or twice and methamphetamine once. The Defendant was placed into foster care at age one and was eventually adopted by a relative, who was abusive. He was taken unexpectedly to live with his mother around age twelve or thirteen, and his mother later abandoned the Defendant and his sister by leaving them with their abusive stepfather and moving out of state. After the stepfather was incarcerated, the Defendant was eventually placed into foster care and later lived on campus when he began college. At the time of sentencing, he lived with his girlfriend of two and one-half years. He reported some work history and had last been employed about seven months before the offense. The Strong-R Risk and Needs Assessment Tool, which was attached to the presentence report, reflected that the Defendant had a risk score of "moderate."

After receiving the evidence and the statements of the victim's mother and the Defendant, the trial court found that gun violence was an issue in Knoxville and that "one of the ways it can stop" would be for the court system to provide an effective deterrent for others. The court stated that it was "somewhat skeptical" of the Defendant's credibility regarding the victim's possession of a gun. The court noted that, even if the Defendant's account were true, the victim had nevertheless sustained "grievous injuries" that were far beyond those necessary to sustain a conviction of aggravated assault. The court stated its belief that the case was "an all or nothing proposition" and that the Defendant would have either been convicted or acquitted of attempted first degree murder if the case had gone to a trial. The court noted the fifteen- to twenty-five-year sentencing range and higher percentage of service requirement for attempted first degree murder. The court found that the presentence report showed the Defendant "had a couple [of] problems as a juvenile"[1] and had used illegal drugs regularly. The court noted, as well, that the Defendant "regularly carried a firearm by [his] own admission."

---

[1] The presentence report reflects that the Defendant had no juvenile charges or adjudications. The Defendant's admitted drug use is the only reference to delinquent activity.

In denying judicial diversion, the trial court stated that it had considered the factors announced in *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). The court found that, on balance, the circumstances of the offense outweighed the factors which favored the Defendant. After denying diversion, the court found that incarceration was the appropriate manner of service for the ten-year sentence.

The Defendant filed a notice of appeal of the sentence and a Motion for Reduction of Sentence. *See* T.R.A.P. 3(b); Tenn. R. Crim. P. 35. In the motion, the Defendant requested split confinement. He noted his lack of criminal convictions, the State's allegation at the sentencing hearing that he had been involved in gang activity despite the notation in the presentence report that no evidence showed he had been, his attorney's lack of knowledge of the existence of the written victim impact statement and lack of knowledge that the victim's mother would testify that nine shots were fired, and the Defendant's statement of his remorse for the shooting and the victim's injuries. The Defendant alleged that the court's findings regarding the need for deterrence were not sufficient to support an order of incarceration. The Defendant also noted the appearance of a person who may have been the victim in the video feed of the victim's mother's statement and alleged that, based upon the movement of the person, the victim's mother may not have been entirely accurate in her account of the extent of the victim's disability. The Defendant recounted his emotional reaction to the sentence imposed by the court and assured the court that he would do his best to comply with the probation component of a split confinement sentence. The Defendant attached letters supporting him from family and friends, which recounted the history of the Defendant's childhood with his own family and in foster care, his popularity and athleticism in high school, his pursuit of higher education, his positive attitude, and his having acted out of character in committing the present offense. The Defendant also attached his own letter, in which he professed his desire to receive the benefit of an alternative sentence and assured the trial court that he would not commit criminal acts again.

At the hearing on the Motion for Reduction of Sentence, defense counsel acknowledged the severity of the victim's injuries but argued that the Defendant should be given an opportunity for an alternative sentence. Counsel noted the Defendant's young age, childhood in foster care, lack of a prior criminal record, college attendance, and efforts to overcome his mental health issues. Counsel also noted that the Defendant was "shaking . . . and having trouble breathing" in a "panic response" at the hearing, which counsel said demonstrated the Defendant's amenability to rehabilitation. Counsel argued that the Defendant was an "appropriate" and "preferred" candidate for probation because he had no prior felony convictions and had not been previously sentenced to prison. *See* T.C.A. § 40-35-102(6)(a) (2019). Similarly, counsel argued that the record did not support a finding of the statutory considerations for confinement regarding the need to restrain a defendant with a long history of criminal conduct, the need to avoid depreciating the seriousness of

the offense, or the particular suitability of confinement to provide an effective deterrent. *See id.*, § 40-35-103(1)(A)-(B) (2019). Counsel argued that split confinement was the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See id.* at (4). Counsel stated that the Defendant had been in confinement for six months and that the Defendant had seen stabbings and overdoses in the Department of Correction, which had been a "shock deterrent."

The State offered the victim's medical records, which were received as an exhibit. The records reflected that the victim was hospitalized for six weeks following the shooting and that his injuries included a carotid artery rupture, traumatic brain injury, cerebrovascular accident, spinal fracture of the C-4 vertebra, tibia fracture, stroke, and vocal cord paralysis.

The prosecutor asked the trial court to take judicial notice of the forty-five homicides which occurred in Knox County in 2020 and the "rampant" gun violence in the community. The court agreed that it could consider this but stated the defense had raised "the very good point" that case law required "something within the record to support the general deterrence argument." The judge declined to take judicial notice of the gun violence in the community, stating, "[I]n this case I don't have to get there."

In denying the motion for reduction of sentence, the trial court stated:

But for the grace of God and good medical care, this young man [the victim] would be dead right now at your hand, and you [the Defendant] would be looking, if you hadn't faced it already, at a conviction for first-degree murder; I think under the best set of facts from what I know about this record, second-degree murder.

Had this case been indicted and gone to trial, there's the very, very strong possibility that you would have been convicted of attempted first-degree murder with serious bodily injury, which is a class A felony, carries 15 to 25 years at 100 percent time. So you received a significant break already in this case by the agreement that [defense counsel] worked out for you.

I am comfortable that I imposed the correct sentence in this case. I'm not going to change it.

And I will reiterate for the record, in case the appellate courts need to look at it again, that I imposed this sentence because of the severity and the seriousness of this crime. You aimed a loaded firearm at another human

being and you fired it multiple times and you grievously injured him, injuries that he will carry with him until he leaves this earth.

This sentence is appropriate for this crime. The motion's respectfully denied.

The Defendant appealed from the motion for reduction of sentence. This court consolidated the appeal from the sentencing and from the motion for reduction of sentence.

## I

### Sentencing

The Defendant contends that the trial court abused its discretion in imposing incarceration, rather than an alternative sentence.[2] The State responds that no abuse of discretion has been shown. We agree with the State.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the result of the validated risk and needs assessment. T.C.A. §§ 40-35-103 (2019), -210 (2019); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2019).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as

---

[2] The Defendant does not challenge the trial court's denial of judicial diversion.

provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2019); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to impose probation); *see also Electroplating*, 990 S.W.2d at 229; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

In the present case, the trial court considered the evidence before it and imposed incarceration based solely upon the seriousness of the offense. If probation is denied solely on the basis of the circumstances of the offense, they "must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than probation. *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (citations omitted). This court has recognized, "This standard has essentially been codified in the first part of T.C.A. § 40-35-103(1)(B) which provides for confinement if it 'is necessary to avoid depreciating the seriousness of the offense.'" *Id*. at 375. In imposing incarceration on this basis, the trial court noted that the victim's injuries were "grievous" and far beyond those necessary to constitute an aggravated assault and that the Defendant faced the probability of an attempted first degree murder conviction if his case had gone to trial. The court noted, as well, at the hearing on the motion for reduction of sentence that the victim had not died, despite his significant injuries, and that the Defendant might have

been convicted of first- or second-degree murder if the victim had died. The record supports the court's determination that the circumstances of the offense surpass the *Hartley* threshold. The victim suffered injuries so significant that his physicians recommended he apply for Social Security Disability. He was left unable to communicate and was confined to a wheelchair. The court expressed its doubt of the Defendant's claim that the victim held a gun when the Defendant shot him. *Cf. State v. Pierce*, 139 S.W.3d 820, 828 (Tenn. 2004) (noting that the facts and circumstances of the offense, which supported a denial of probation, included the defendant's having pleaded guilty to the lesser offense of attempted rape of a child, despite the evidence that he committed the greater, charged offense of rape of a child).

Upon review, we conclude that no abuse of discretion has been shown. The trial court was heavily swayed by the circumstances of the offense and stated on the record that it relied upon the "severity and the seriousness of this crime" in denying alternative sentencing.

In reaching this conclusion, we have considered the Defendant's argument that the trial court should have applied mitigating weight based upon the Defendant's "difficult and traumatic upbringing" and his efforts to overcome his upbringing by completing high school and attending college. Although the court did not specifically mention the Defendant's upbringing as a mitigating factor, it stated in denying diversion that it had considered the factors outlined in *Electroplating, Inc.*, 990 S.W.2d at 229, and it found that the factors favoring the Defendant were outweighed by the circumstances of the offense. The *Electroplating* factors include the defendant's social history, and the *Electroplating* factors are likewise relevant to a denial of probation. *Trent*, 533 S.W.3d at 291; *Electroplating*, 990 S.W.2d at 229.

We have also considered the Defendant's argument that the trial court initially relied upon deterrence in imposing incarceration. The record reflects that at the sentencing hearing, the court made comments about gun violence in the community about incarceration being "one of the ways" to deter such violence. The court later said at the hearing on the motion for reduction of sentence that a denial of alternative sentencing based upon the need for general deterrence required the introduction of evidence to support a finding that the need existed. The court clarified that its imposition of an incarcerative sentence was based solely upon the gravity of the offense committed.

The Defendant is not entitled to relief on this basis.

## II

## Motion for Reduction of Sentence

The Defendant contends that the trial court abused its discretion in denying his motion for reduction of sentence. The State counters that no abuse occurred. We agree with the State.

Tennessee Rule of Criminal Procedure 35 permits a trial court to reduce a sentence upon a motion filed within 120 days of the imposition of the sentence or revocation of probation. Tenn. R. Crim. P. 35(a). The intent of this rule "is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." *Id*. (Advisory Comm'n Cmts.)

The modification permitted by this rule is any modification otherwise permitted by the law when the judge originally imposed sentence including but not limited to a transfer to the workhouse or probation to otherwise eligible defendants. A trial court's authority to modify a sentence pursuant to Rule 35 extends only to a sentence which the court could have originally imposed at the time of sentencing. See Tenn. R. Crim. P. 35 (Advisory Comm'n Cmts.). If a defendant has pleaded guilty with an agreement as to the sentence, he must show a post-sentencing change in circumstances to justify a reduction or modification of the sentence. *State v. Patterson*, 564 S.W.3d 423, 434 (Tenn. 2018). However, if he pleaded guilty without a sentencing agreement, he is not required to make a particular showing in order to obtain a reduction if the interests of justice require. *Id*. at 433-34. If there is a modification, the state may appeal. Tenn. R. Crim. P. 35 (Advisory Comm'n Cmts.). Appellate review of a motion to reduce a sentence pursuant to Rule 35 is for abuse of discretion. *Patterson*, 564 S.W.3d at 430.

At the hearing, the defense argued that the Defendant had been subjected to a "shock deterrent" during his incarceration in the Department of Correction and that he should be resentenced to split confinement of one year, with credit for approximately six months served, followed by nine years of probation. The court again noted the egregious circumstances of the offense and found that they outweighed all other considerations. The record supports the court's determination. Thus, the Defendant has not shown that the interests of justice require reduction of the sentence. The court did not abuse its discretion in denying the motion for reduction of sentence. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE